IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


JANET L. GOSSAGE,                    *

        Plaintiff,                   *

vs.                                  *
                                          CASE NO. 3:05-CV-77 (CDL)
WAL-MART STORES, INC.,               *

        Defendant.                   *


<u>O R D E R</u>

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 24).  For the following reasons, Defendant's motion is granted.


BACKGROUND

Plaintiff, Janet L. Gossage, was employed by Defendant Wal-Mart from November 4, 2000 until her termination on May 11, 2005. Plaintiff began working for Defendant as an hourly associate.  In January 2003, Plaintiff was invited to join Wal-Mart's management training program.  In order to enter the program, Plaintiff was required to take a pay-cut to the base salary offered to associates in the training program.  Mr. Steve Cauley, Plaintiff's district manager, offered Plaintiff the base salary because Plaintiff had no "relevant prior retail management experience or other relevant experience." (Cauley Decl. ¶ 7.)  In June 2003, Plaintiff completed her training at the Wal-Mart store located in Athens, Georgia.

Plaintiff was subsequently promoted to the position of assistant manager at the Athens store and received a pay increase to the base pay for assistant managers. On May 1, 2004, Plaintiff transferred to the Wal-Mart store in Madison, Georgia. Plaintiff then transferred, in October 2004, to the Wal-Mart store in Loganville, Georgia. In January 2005, Plaintiff became the assistant manager of the bakery department of the Loganville Wal-Mart. In March 2005, Plaintiff received a pay increase.

In May 2005, an associate under Plaintiff's supervision, Ms. Angie O'Connell, complained to one of Plaintiff's managers, Mr. Dale Norbeck, that she had not been paid for the full amount of time that she worked. Ms. O'Connell explained that although she had worked overtime, she was not paid for it. Ms. O'Connell further explained that Plaintiff had adjusted Ms. O'Connell's time and moved any overtime to the following pay period. Mr. Norbeck referred Ms. O'Connell's complaint to the store manager, Mr. Dennis Dickson, and the district loss prevention manager, Corey Reed. Mr. Norbeck, Mr. Dickson, and Mr. Reed, along with Plaintiff's other manager Ms. Josie Brumfield, investigated the complaint and concluded that Plaintiff had violated the payroll policy by altering an associate's time. Mr. Cauley and Mr. Reed met with Plaintiff and asked her to explain why Ms. O'Connell's time was altered. Plaintiff summarily denied the allegations against her, but did not give an explanation as to how else Ms. O'Connell's time could have been changed using Plaintiff's password. As a result, Mr. Cauley concluded that

Plaintiff had intentionally violated the payroll policy, and Mr. Cauley terminated Plaintiff on May 11, 2005.

On September 23, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that Wal-Mart discriminated against her based upon her gender and disabilities, and that Wal-Mart retaliated against her for engaging in protected activity. The EEOC dismissed Plaintiff's charge of discrimination on May 15, 2006. Plaintiff subsequently filed this cause of action on August 26, 2005, claiming Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), by engaging in wage discrimination against Plaintiff. Plaintiff also alleges that Defendant violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by interfering with her right to take leave and by retaliating against Plaintiff for taking FMLA leave.[1]

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a

---

[1]Plaintiff also initially claimed that she was subjected to gender discrimination in her termination and that she was retaliated against because of her gender in violation of Title VII. Plaintiff, however, has abandoned these claims. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 2 n.1.)

matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II. Disparate Pay

Plaintiff claims Defendant discriminated against her in pay because of her gender in violation of both Title VII and the EPA. Title VII prohibits discrimination against an employee because of that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The EPA prohibits wage discrimination on the basis of sex. 29 U.S.C. § 206(d)(1). The two provisions have

4

different standards for establishing discrimination in pay based on gender.

A.  Title VII Pay Discrimination

A plaintiff who presents circumstantial evidence of discrimination under Title VII must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff can support a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). If the defendant carries this burden, the presumption of discrimination is rebutted. *Burdine*, 450 U.S. at 255. The plaintiff can then defeat summary judgment by creating a jury question as to whether the defendant's legitimate non-discriminatory reason is pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

1.  *Prima Facie Case*

In order to establish a prima facie case of discrimination in pay, Plaintiff must show that (1) she is a member of a protected class and (2) that "the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). The second element of a prima

facie case requires that a plaintiff show that her position was "substantially similar" to her comparator's position. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 598 (11th Cir. 1994). The comparator must have "very similar job-related characteristics" to Plaintiff. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). It is undisputed that Plaintiff is a member of a protected class. Thus, in order to establish a prima facie case of pay discrimination, Plaintiff must show that she was paid less than males in jobs substantially similar to Plaintiff's job.

Plaintiff has identified the following comparators: John Willis, Andrew Kramer, James Worden, Reggie Bond, Charles Dudley, Reuben Jones, George Alloy, James Kennedy, and Richard Sports. First, regarding John Willis, Plaintiff admits that Mr. Willis was never paid more than Plaintiff. (Pl.'s Objection & Resp. to Def.'s Separate Statement of Undisputed Material Facts ¶ 96.) Additionally, although Plaintiff contends that George Alloy was paid more than Plaintiff, the record indicates that Mr. Alloy was paid the same as Plaintiff until May 15, 2004 when Plaintiff received a pay raise before Mr. Alloy. (Cauley Dep. Exs. 22, 36, Nov. 7, 2006.) Consequently, Plaintiff has failed to establish a prima facie case concerning Mr. Willis or Mr. Alloy. Regarding the remaining comparators, the Court finds for purposes of the pending motion that Plaintiff has presented a prima facie case of pay discrimination.

## 2. *Legitimate Non-discriminatory Reason*

Specifically, Plaintiff claims that she was discriminated against in pay when she entered into the management training program and had to take a pay-cut. Plaintiff claims that there were similarly situated males who were paid more when they entered the management program, and that this pay disparity continued throughout Plaintiff's employment. Defendant has articulated legitimate non-discriminatory reasons for the pay disparities between the comparators and Plaintiff. First, Defendant explains that Mr. Andrew Kramer was not in the same district as Plaintiff, did not have the same supervisor as Plaintiff, and that when entering the management program, Mr. Kramer had prior experience as a manager in Wal-Mart's Tire Lube Express ("TLE") department. (Cauley Decl. ¶ 12.) Second, regarding Mr. James Worden, Defendant states that he was paid more because of his prior experience as a produce clerk, because he was excelling at Wal-Mart, and because Wal-Mart was struggling to find a manager with produce experience. (Cauley Decl. ¶ 13.) Third, Defendant asserts that Mr. Reggie Bond was paid more than Plaintiff because he had over twenty years experience as a produce manager at two different grocery stores. (Cauley Decl. ¶ 19.) Fourth, Mr. Charles Dudley, Defendant states, was paid more because of his prior experience as a bookkeeper[2] in a grocery store. (Cauley Decl. ¶ 20.) Fifth, regarding Mr. Reuben Jones, Defendant explains that he

---

[2] A "bookkeeper" in a grocery store has some managerial duties. (Cauley Decl. ¶ 20.)

was paid more than Plaintiff because he had almost ten years experience as a market manager. (Cauley Decl. ¶ 21.) Sixth, Defendant states that Mr. James Kennedy was paid more because of his prior retail experience, his prior military experience, and because his salary was off-set to compensate Mr. Kennedy for working in an area that did not have an additional cost of living pay. (Cauley Decl. ¶ 11.) Finally, Defendant asserts that Mr. Richard Sports was paid more than Plaintiff because he had prior supermarket experience, prior military experience, and because his salary when he entered the management program was over $14.00 per hour. (Cauley Decl. ¶ 24.)

Defendant has therefore met its initial burden by articulating legitimate non-discriminatory reasons for paying the comparators more than Plaintiff. Consequently, in order to defeat summary judgment, Plaintiff must produce evidence that creates a question of fact as to whether Defendant's articulated reasons are pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

### 3. Pretext

Plaintiff has the burden of creating a question of fact as to whether Defendant's articulated legitimate non-discriminatory reasons are pretext for discrimination. "In other words, [Plaintiff] must demonstrate that a discriminatory reason more likely than not motivated [Defendant] to pay her less, or that [Defendant's] explanation is not worthy of belief." *Miranda v. B & B Cash Grocery*

*Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992) (citations omitted). In order to meet her burden on pretext, Plaintiff argues (1) that the pay of Plaintiff's two managers should be considered as evidence of pretext, (2) that Defendant's articulated reasons are not supported by evidence, (3) that the Court should consider a statistical report attached to a Ninth Circuit class certification motion, and (4) that Defendant's articulated reasons are completely subjective. The Court finds these arguments unpersuasive.

a. Wage Disparity Between Plaintiff's Managers

First, regarding the pay of Plaintiff's supervisors, that evidence is not evidence of discrimination against Plaintiff. Plaintiff has failed to link the decision to pay her male and female managers different wages to any decision to pay Plaintiff a salary different from her comparators. Additionally, Plaintiff's supervisor, who made the determination as to her salary, had no input in setting the salaries of Plaintiff's managers.

b. Lack of Evidence

Plaintiff's second basis for pretext, that Defendant's articulated reasons are not supported by evidence, is equally unconvincing. In order to promote clarity, the Court divides this section based on the alleged comparator:

Andrew Kramer

First, Plaintiff claims that Defendant has given no reason for the pay disparity between Mr. Kramer and Plaintiff. To the contrary,

9

Defendant explains that Plaintiff's supervisor did not make the decision as to Mr. Kramer's pay, that Mr. Kramer did not work in the same district as Plaintiff, and that Mr. Kramer had prior experience as a TLE manager for Wal-Mart. Plaintiff has not provided any evidence to show that these statements are false or that Defendant possessed a discriminatory motive in making a decision as to Plaintiff's pay.

### James Worden

Second, regarding Mr. Worden, Plaintiff does not show that the evidence fails to support Defendant's articulated reason for his pay. In fact, the record shows that Mr. Worden had six years prior experience as a produce clerk and was excelling at Wal-Mart. (Cauley Dep. Ex. 28.) Plaintiff's summary argument that Defendant's articulated reasons are not sufficient to justify Mr. Worden's higher pay is insufficient to create a genuine issue of material fact as to the issue of pretext.

### Charles Dudley

Third, Plaintiff argues that Mr. Dudley's experience as a bookkeeper fails to justify the pay disparity between Plaintiff and Mr. Dudley. As with Mr. Worden, Plaintiff does not argue that Mr. Dudley did not have this prior experience, but that the prior experience is not sufficient to justify the pay disparity. Plaintiff, however, produces no evidence to explain why Mr. Dudley's prior experience is not a sufficient reason for the pay disparity. The Court is "not in the business of adjudging whether employment

decisions are prudent or fair." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (citation and quotation marks omitted). Instead, the Court's "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Id*. (citation and quotation marks omitted). Plaintiff has produced no evidence to show that the decision to pay Mr. Worden or Mr. Dudley more than Plaintiff is based on a discriminatory animus.

### Richard Sports

Fourth, Plaintiff claims that Mr. Sports did not actually have prior work experience at Big Star Food Stores. Although "Big Star Foods" is not listed as a prior employer on Mr. Sports's Wal-Mart application, it does not necessarily follow that Mr. Sports did not have such experience. (Cauley Dep. Ex. 29.) Additionally, Mr. Cauley, Plaintiff's district manager and the person responsible for selecting candidates for the management program and setting those candidates' pay, stated that he "understood that [Mr. Sports] had numerous years of prior supermarket experience with Big Star Foods." (Cauley Decl. ¶ 24; *see also* Cauley Dep. 163:21-165:18.) As explained above, this Court does not make a determination as to whether Defendant's "conclusion is a correct one." *Rojas*, 285 F.3d at 1342. Instead, this Court is concerned with whether Defendant's articulated reason "is an honest one." *Id*. Thus, Plaintiff would need to provide evidence to create a question of fact as to whether Mr. Cauley believed Mr. Sports had prior supermarket experience or

whether Mr. Cauley actually used the experience as a factor in determining pay. Plaintiff has failed to produce such evidence. Furthermore, Plaintiff has failed to address the fact that Mr. Sports was paid $14.18 per hour before entering into the management program and received a pay-cut of $2.35 per hour when he entered into the program. Plaintiff was paid $11.90 before entering into the program and only received a pay-cut of $1.72 an hour when she entered into the program. Plaintiff has failed to rebut the evidence that the Defendant considered Mr. Sports's previous wage in making a decision on Mr. Sports's starting wage in the management program.

Reuben Jones, James Kennedy, and Reggie Bond

Finally, Plaintiff has failed to respond to the articulated legitimate non-discriminatory reasons for the pay disparity between Plaintiff and Mr. Jones, Mr. Kennedy, or Mr. Bond. Consequently, Plaintiff has failed to meet her burden on the issue of pretext concerning Mr. Jones, Mr. Kennedy, or Mr. Bond.

c. Statistical Report

Plaintiff next argues that this Court should consider a statistical report submitted in a Ninth Circuit class certification motion. This report is hearsay, and as such cannot be considered on a motion for summary judgment. Furthermore, the report is irrelevant as to whether Defendant's articulated reasons for paying Plaintiff's comparators more than Plaintiff are pretext for discrimination.

d.  Subjectivity of Defendant's Reasons

Finally, Plaintiff claims that Defendant's articulated reasons are completely subjective.  First, Defendant's articulated reasons for its actions—the comparators' experience and the company's need—are not subjective.  Subjective reasons are those such as poor interview performance or a subjective evaluation of personal qualities such as "common sense, good judgment, originality, ambition, loyalty, and tact."  *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001) (citation and internal quotation marks omitted); *see also Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001) (explaining that "poor interview performance" can be a subjective reason for an employer action).  Second, the Court notes that "a subjective reason for an employer's action . . . can be as legitimate as any other reason."  *Bass*, 256 F.3d at 1105 (citation omitted).  "[I]n order for a subjective reason to constitute a legally sufficient, legitimate, nondiscriminatory reason, the [employer] must articulate a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Id.* at 1106 (citations and internal quotation marks omitted).  Thus, the mere fact that the employer's articulated non-discriminatory reasons are subjective is not, by itself, enough to establish pretext.

In sum, Plaintiff has failed to present evidence to create a question of fact as to whether Defendant's articulated non-discriminatory reasons for the pay disparities are pretext for

13

discrimination.  Defendant's Motion for Summary Judgment is hereby granted as to Plaintiff's claims for pay discrimination under Title VII.

B.  Equal Pay Act Wage Discrimination

Similar to a claim for pay discrimination under Title VII, in order to establish a claim for wage discrimination under the EPA, an employee must first establish a prima facie case.  "An employee demonstrates a prima facie case of an [EPA] violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (citations and internal quotation marks omitted).  Unlike Title VII, however, the EPA has a "geographic limitation" which requires that a plaintiff's comparator employees work in the same "establishment" as the plaintiff.  *Mulhall*, 19 F.3d at 590. "Plaintiff establishes a prima facie case by satisfying both the geographic and descriptive components of the test as applied to even one comparator."  *Id.*

If the employee demonstrates a prima facie case, the employer "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than

sex." *Steger*, 318 F.3d at 1078 (quoting 29 U.S.C. § 206(d)(1)) (alteration in original). These four justifications are affirmative defenses for which the defendant employer bears a heavy burden of proof. The employer "must show that the factor of sex provided *no basis* for the wage differential[.]" *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal quotation marks and citation omitted) (emphasis in original). An employer, however, can consider "the unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business." *Id.* at 955 (citations and internal quotation marks omitted) (alterations in original). At the summary judgment stage, the defendant employer must establish that there are no genuine issues of material fact regarding the validity of its affirmative defense. If the defendant meets this burden, it is absolved of liability as a matter of law. *See Mulhall*, 19 F.3d at 590-91.[3]

---

[3]The Court notes the existence of Eleventh Circuit precedent that adds another step to this analysis. That step is described as follows: If the defendant employer meets its burden of establishing an affirmative defense, the plaintiff employee "must rebut the explanation by showing with affirmative evidence that [the defendant's explanation] is pretextual or offered as a post-event justification for a gender-based differential." *Steger,* 318 F.3d at 1078 (internal quotation marks and citation omitted). "If [the] plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954. It is clear, however, that "[o]nce [Plaintiff] establishes a prima facie case of discrimination in pay based on sex, the success of [D]efendant['s] motion rests on [its] ability to prove an affirmative defense." *Mulhall*, 19 F.3d at 591. Although a plaintiff must produce evidence sufficient to create a genuine issue of fact regarding the defendant's affirmative defense in order to survive summary judgment, the defendant still bears the burden of persuasion that such genuine issue does not exist. *See id.*,

*1. Prima Facie Case*

Plaintiff uses the same evidence to support her claim for wage discrimination under the EPA as she did to support her claim for pay discrimination under Title VII.  Consequently, for the same reasons explained above concerning a prima facie case under Title VII, the Court finds for purposes of the pending motion that Plaintiff has presented a prima facie case under the EPA regarding comparators James Worden, Reggie Bond, Charles Dudley, Reuben Jones, James Kennedy, and Richard Sports.  Regarding Mr. Andrew Kramer, however, the Court finds that he is not a proper comparator under the EPA.

Under the EPA, a comparator "must work in the same 'establishment' as the claimant." *Mulhall*, 19 F.3d at 590 (citation omitted).  An "establishment" is a "distinct physical place of business rather than . . . an entire business or enterprise which may include several separate places of business." *Id.* at 591 (citation and internal quotation marks omitted) (alteration in original). Additionally, a single enterprise has "centralized control of job descriptions, salary administration, and job assignments or functions." *Id.* at 591.  In other words, a company with multiple stores or operations can be considered one single "establishment"

_____

19 F.3d at 591 ("[B]y moving for summary judgment under the EPA, defendants thrust before the court . . . the strength of their own defense and must establish that there is an absence of any issue for jury resolution."); *see also Buntin v. Breathitt Cty. Bd. of Educ.,* 134 F.3d 796, 800 n.7 (6th Cir. 1998) (criticizing *Irby*'s triple burden shifting analysis for requiring plaintiff to "bear[] the burden of *persuasion* regarding the affirmative defenses") (emphasis in original).

under the EPA if it meets the standard for centralized control. *Id.* Defendant claims that Mr. Kramer was not in the same establishment as Plaintiff because (1) Mr. Kramer initially worked in Ohio as a TLE manager, (2) when Mr. Kramer moved to Georgia he was not part of Mr. Cauley's district, and (3) Mr. Cauley had no control in deciding Mr. Kramer's pay or in inviting Mr. Kramer to attend management training. Plaintiff fails to respond to these arguments or to provide any evidence which shows that Mr. Kramer was in the same establishment as Plaintiff. Consequently, Plaintiff has failed to meet her burden to show that Mr. Kramer was in the same "establishment" as Plaintiff, and Plaintiff has failed to present a prima facie case of disparate pay under the EPA regarding Mr. Kramer.

2.  *Defendant's Affirmative Defense*

Since Plaintiff has established a prima facie case under the EPA with respect to comparators Mr. Worden, Mr. Bond, Mr. Dudley, Mr. Jones, Mr. Kennedy, and Mr. Sports, the burden shifts to Defendant to show by a preponderance of the evidence that "the factor of sex provided no basis for the wage differential." *Steger*, 318 F.3d at 1078 (citation, internal quotation marks, and emphasis omitted). Defendant claims that the pay differences between the comparators and Plaintiff are based upon factors other than sex. Specifically, Defendant claims that the pay disparities are based upon the comparators' prior experience and the comparators' prior salaries. An employer "may successfully raise the affirmative

defense of any other factor other than sex if he proves that he relied on prior salary and experience in setting a new employee's salary." *Irby*, 44 F.3d at 955. Additionally, "[e]xperience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender." *Id.* at 956. As explained in detail previously,[4] Defendant has produced evidence which affirmatively shows Defendant based the comparators' pay on their experience, their prior salaries, and/or the Defendant's specific need.[5] (*See* Cauley Decl. ¶¶ 11, 13, 19-20, 21, 24; Cauley Dep. Ex. 28-30, 46.) The evidence also shows that Plaintiff's salary when entering into the management program was based upon her lack of experience. (Cauley Decl. ¶ 6-7.) In response, Plaintiff has produced no contrary evidence from which a reasonable jury could conclude that the pay disparities were based on Plaintiff's gender. Therefore, the Court finds that the undisputed evidence establishes the validity of Defendant's affirmative defense. Since no genuine issues of material fact exist regarding Defendant's affirmative defense, Defendant is entitled to summary judgment on Plaintiff's EPA claim.[6]

---

[4]*See, supra*, Parts **II**.A.*2*, **II**.A.*3*.b.

[5]Regarding Mr. Worden, Defendant explained that Defendant was "struggling to find a manager with produce experience." (Cauley Decl. ¶ 13.)

[6]Since the undisputed evidence establishes Defendant's affirmative defense, it is unnecessary to proceed further with the analysis. Nevertheless, the Court observes that it is likewise clear that if the Court proceeded to the next step as suggested by such cases as *Steger* and

### III.  FMLA Claim

Under the FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  An employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(1).  Additionally, it is illegal for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."  29 U.S.C. § 2615(a)(2).  Plaintiff claims that Defendant violated the FMLA when it interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for asserting her rights under the FMLA.

A.  Interference Claim

"In an interference claim the employee must show only that he or she was entitled to the benefit denied."  *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (citation and internal

---

*Irby,* it would not change the result.  The record is clearly void of affirmative evidence that "the explanation [for the pay disparity] . . . is pretextual or offered as a post-event justification for a gender-based differential."  *Steger*, 318 F.3d at 1078 (internal quotation marks and citation omitted).  Plaintiff's conclusory statements that Defendant's explanations are unsupported by the evidence are insufficient to create a question of fact as to pretext.  Since Plaintiff failed to "create the inference of pretext," *Irby*, 44 F.3d at 954, she failed to create a genuine issue that Defendant violated the EPA.  Therefore, under this expanded EPA analysis, Defendant is entitled to summary judgment on this claim.

quotation marks omitted). "The employee need not allege that his employer intended to deny the benefit—the employer's motives are irrelevant." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (citation and internal quotation marks omitted). However, Plaintiff must show (1) that she was entitled to a benefit under the FMLA and (2) that the benefit was denied her.

Plaintiff concedes that she "was not prevented from taking time off for her FMLA qualifying sickness[.]" (Pl.'s Resp. to Def.'s Mot. for Summ. J. 14.) Thus, even assuming Plaintiff was entitled to a benefit under the FMLA, Plaintiff has failed to show that Defendant interfered with her FMLA rights because Plaintiff was not denied any FMLA benefit. Consequently, Defendant's Motion for Summary Judgment on Plaintiff's interference claim is granted.[7]

B. Retaliation

Plaintiff also claims she was retaliated against in violation of the FMLA. In order to maintain a claim for retaliation under the FMLA, a plaintiff must first establish a prima facie case of retaliation. *Hurlbert*, 439 F.3d at 1297 (citations omitted). A

---

[7]Plaintiff contends, however, that Defendant did interfere with her FMLA rights because the actions taken by Defendant would have "dissuaded a reasonable worker" from taking FMLA leave. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 14-15.) Plaintiff's argument confuses an interference claim with a retaliation claim. A plaintiff can establish that she suffered an adverse employment action—an essential element of a prima facie case of retaliation—by showing that her employer took an action against her which would have dissuaded her from asserting her FMLA rights. *See, e.g., Burlington N. v. White*, 126 S. Ct. 2405, 2414-15 (2007) (discussing adverse employment actions in the context of a Title VII case). The Court will consider these arguments in Plaintiff's claim for retaliation under the FMLA.

prima facie case of retaliation is established where the plaintiff shows that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Id.* (citation omitted). If a plaintiff meets this burden, the employer then must articulate a legitimate non-discriminatory reason for its actions. *Id.* (citation omitted). Once the defendant employer articulates a non-discriminatory reason for the adverse action, the plaintiff must then show that the defendant's articulated reason is actually pretext for discrimination. *Id.* (citation omitted).

Here, Plaintiff claims that she was terminated because (1) she took FMLA leave and because (2) she complained in March 2005 that she was being disciplined for having health issues. (*See* Cauley Dep. Ex. 6.) The Court assumes, without finding, that Plaintiff engaged in statutorily protected activity. It is undisputed that Plaintiff suffered an adverse employment action when she was terminated. Additionally, since there is less than two months time between Plaintiff's statutorily protected activities and her termination, Plaintiff has created a question of fact as to whether a causal connection exists. *See, e.g., Daugherty v. Mikart, Inc.*, 205 Fed. App'x 826, 827 (11th Cir. 2006) ("Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of

material fact of a causal connection.") (citation and quotation marks omitted).  Plaintiff has therefore created a genuine issue of material fact as to the existence of a prima facie case of retaliation.

Since there is a question of fact as to whether Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for Plaintiff's termination.  Defendant states that Plaintiff was terminated because she violated Wal-Mart's Payroll Integrity Policy. Thus, the burden shifts back to Plaintiff to show that Defendant's articulated reason for her termination is actually pretext for discrimination.  "Pretext is proven if it is shown both that the reason was false, and that discrimination was the real reason behind the challenged action." *Daugherty*, 205 Fed. App'x at 827 (quotation marks and citation omitted).  "The passage of a short amount of time between the plaintiff's request for leave and [her] termination may not be sufficient, by itself, to establish pretext." *Id.* (citation omitted).  Additionally, "an employer may fire an employee based upon erroneous facts, as long as it is not for a discriminatory reason." *Id.* (citation omitted).

Plaintiff has failed to show that Defendant's actions are pretext for discrimination.  Plaintiff alleges the following instances show pretext: (1) temporal proximity between her FMLA leave and termination; (2) Plaintiff was disciplined for taking FMLA leave

in December 2004; and (3) Plaintiff did not violate the payroll policy. First, although temporal proximity between a protected activity and an adverse employment action can be evidence of pretext, it is not enough to establish pretext on its own. *Hulbert*, 439 F.3d at 1298 (explaining that two-week period between protected activity and adverse employment action is evidence of pretext "though probably insufficient to establish pretext by itself") (citation omitted).

Second, Plaintiff claims that she received a December 2004 verbal "coaching"[8] for FMLA leave. Plaintiff, however, has failed to show how this coaching related to Plaintiff's termination or that Defendant's articulated reason for her termination is pretext for discrimination. Furthermore, Plaintiff has failed to show (1) that she received a coaching because she took FMLA leave,[9] or (2) that the manager who gave her the coaching, Mr. Dale Norbeck, knew that she had allegedly taken FMLA leave.[10]

———————————

[8]Wal-Mart gives employees "coachings" instead of write-ups. A coaching can be formal or informal, written or verbal. (*See* Gossage Dep. Ex. 12.)

[9]The coaching states:

On 12-17-04 Janet was late to work. Janet has been tardy numerous times. She also has missed many [days of] work. An excessive number of excused absentees.

(Norbeck Dep. Ex. 2, Nov. 1, 2006.)

[10]Plaintiff cites to Exhibit 9 to Mr. Norbeck's deposition as evidence that Mr. Norbeck knew Plaintiff took FMLA leave. The exhibit is a grouping of doctor's notes that Plaintiff gave to Mr. Norbeck. Concerning the December 2004 coaching, however, this exhibit shows only that Plaintiff had a doctor's note for one work absence in November 2004.

Finally, even assuming Plaintiff did not violate Defendant's payroll policy, Plaintiff has failed to produce evidence which shows that Defendant did not honestly believe that Plaintiff violated the payroll policy. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Instead, the Court must determine if the employer "gave an honest explanation of its behavior." *Id.* Consequently, Plaintiff has failed to show that Defendant's articulated non-discriminatory reason for her termination was pretext for discrimination under the FMLA. Defendant's Motion for Summary Judgment is therefore granted as to Plaintiff's FMLA retaliation claim.

CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 24) is granted as to all of Plaintiff's claims.

IT IS SO ORDERED, this 27th day of September, 2007.

/s/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE